UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FEB 25 2025 PM5:06
FILED-USDC-CT-NEW_HAVEN

Grand Jury N-24-2

UNITED STATES OF AMERICA

v.

KONSTANTINOS DIAMANTIS, a.k.a. "Kosta," and CHRISTOPHER ZIOGAS

CRIMINAL NO. 3:25-cr- ( )( )

VIOLATIONS:

Diamantis and Ziogas:
18 U.S.C. § 1951 (Extortion)
18 U.S.C. § 666(a)(1)(B) (Bribery)
18 U.S.C. § 1951 (Conspiracy to Commit Extortion)
18 U.S.C. § 371 (Conspiracy to Commit Bribery)
18 U.S.C. § 1001 (False Statements)

Diamantis:
26 U.S.C. § 7206(1) (Filing a False Tax Return)

Ziogas:
18 U.S.C. § 1957 (Illegal Monetary Transactions)
18 U.S.C. § 1344 (Bank Fraud)

# INDICTMENT

The Grand Jury charges:

1. As alleged more fully below, in his capacity as an official of the State of Connecticut, the defendant KONSTANTINOS DIAMANTIS, also known as "Kosta," aided and abetted by the defendant CHRISTOPHER ZIOGAS, engaged in a scheme and conspiracy in which he solicited and received corrupt payments and benefits from a health care provider in exchange for official acts concerning a State audit of the provider's Medicaid overbilling, and took steps to conceal their conduct.

2. Separately, ZIOGAS engaged in a bank fraud scheme by fraudulently obtaining money from a client's trust fund account, which he then provided to DIAMANTIS.

COUNT ONE
(DIAMANTIS and ZIOGAS)
(Extortion Under Color of Official Right)

The Defendants

3. At all times relevant to this Indictment, the defendant KONSTANTINOS DIAMANTIS, also known as "Kosta," a resident of Farmington, Connecticut, was an employee of the State of Connecticut; specifically, DIAMANTIS was the deputy secretary of the State of Connecticut's Office of Policy and Management. DIAMANTIS was also an attorney and, from 1993 until 2005, served as a State Representative for Connecticut's 79th Assembly District, which includes a portion of Bristol, Connecticut.

4. At all times relevant to this Indictment, the defendant CHRISTOPHER ZIOGAS, a resident of Bristol, was the State Representative for the 79th District. ZIOGAS was also an attorney, a financial advisor, and a life-long friend of DIAMANTIS.

Other Relevant Individuals and Entities

5. At all times relevant to this Indictment, Helen Zervas was a licensed optometrist and a participating provider in the Connecticut Medicaid Program. Zervas was the owner and operator of Family Eye Care in Bristol. Zervas was also ZIOGAS's fiancée. Zervas was a co-conspirator of DIAMANTIS and ZIOGAS, and has been charged separately.

6. The Connecticut Medicaid Program ("Medicaid") was a health care benefit program in which medical benefits, items, and services were provided to Medicaid clients in Connecticut. The Connecticut Medicaid Program was jointly funded by the State of Connecticut and the federal government, and administered by the State's Department of Social Services ("DSS").

7. The State's Office of Policy and Management ("OPM") had statutory responsibility for all aspects of State staff planning and analysis in the areas of budgeting, management, planning,

energy policy determination and evaluation, intergovernmental policy, criminal and juvenile justice planning and program evaluation. OPM's role in the budget process made it a powerful State agency, and DIAMANTIS and Public Official-1 were powerful State officials.

8. At all times relevant to this Indictment, Public Official-1, whose identity is known to the Grand Jury, was a senior official at OPM who worked closely with DIAMANTIS.

9. At all times relevant to this Indictment, Public Official-2, whose identity is known to the Grand Jury, was a senior official at DSS who supervised Public Official-3.

10. At all times relevant to this Indictment, Public Official-3, whose identity is known to the Grand Jury, was a senior official at DSS who supervised DSS's Office of Quality Assurance, which was responsible for auditing and investigating health care providers' Medicaid billings and making appropriate criminal referrals.

<u>The Extortion Scheme</u>

11. From in or about January 2020 until in or about June 2020, the exact dates being unknown to the Grand Jury, in the District of Connecticut and elsewhere, the defendants KONSTANTINOS DIAMANTIS, also known as "Kosta," and CHRISTOPHER ZIOGAS knowingly committed extortion (as that term is defined in Title 18, United States Code, Section 1951(b)(2)), in that DIAMANTIS, aided and abetted by ZIOGAS, obtained payments from Family Eye Care and Helen Zervas with their consent under color of official right, and thereby did and attempted to obstruct, delay, and affect commerce and the movement of articles and commodities in commerce (as that term is defined in Title 18, United States Code, Section 1951(b)(3)) in any way and degree; that is, DIAMANTIS and ZIOGAS caused Family Eye Care and Zervas to make payments to DIAMANTIS through ZIOGAS in exchange for DIAMANTIS taking official acts and for advising and pressuring other State officials—including Public Official-1, Public Official-2, and Public Official-3—to undertake official acts regarding the State's pending Medicaid audit

of Zervas and Family Eye Care.

12. At all times relevant to this Indictment, DSS's Office of Quality Assurance had multiple components, including an Audit Division and a Special Investigations Division, each of which was overseen by Public Official-3. If the Audit Division identified suspected fraud in a medical provider's Medicaid billings, it would refer the matter to the Special Investigations Division for further investigation. The Special Investigations Division could then refer substantiated cases of Medicaid overbilling for investigation by law enforcement and possible criminal prosecution.

13. In a January 6, 2020 letter from Public Official-3, DSS provided notice that it would perform an audit of Zervas's and Family Eye Care's Medicaid billings.

14. Zervas knew that she had been engaged in a years-long scheme to fraudulently overbill Medicaid for medical services that she had not performed or that were not medically necessary, all in order to increase her compensation.

15. DSS's initial review of certain of Zervas's records led Public Official-3 to comment to the supervisor of the audit, "Looking like a fraud case."

16. Zervas retained an attorney in connection with the audit. After consulting her attorney, Zervas became concerned that DSS would complete its audit, determine the full extent of her Medicaid fraud, suspend her from Medicaid reimbursements, disenroll her from Medicaid, and refer her for professional discipline or criminal investigation.

17. Zervas sought ZIOGAS's assistance to prevent DSS's audit from proceeding. ZIOGAS, in turn, sought help from DIAMANTIS.

18. In exchange for payments from ZIOGAS and Zervas, and the agreement to make future payments, DIAMANTIS undertook official acts and advised and pressured other State officials to undertake official acts aimed at favorably resolving DSS's audit.

19. On or about March 4, 2020, based on an agreement with Zervas, ZIOGAS made an initial bribe payment to DIAMANTIS of $20,000. The next day, Zervas reimbursed ZIOGAS for that corrupt payment with a $25,000 check from Family Eye Care.

20. Also on or about March 4, 2020, Zervas's attorney wrote in an email to Public Official-3 proposing to settle the audit:

> As we discussed, Family Eye Care, LLC discovered that it was paid by the Medicaid program for services that were not performed. We are still investigating, but I wanted to send you the overpayment amounts that we calculated to date.... The total amount equals: $599,810. The provider is prepared to repay this amount forthwith....

At the time Public Official-3 received this email, DSS's audit of Zervas was incomplete. Afterwards, DSS did no further work on that audit.

21. On or about March 12, 2020, based on an agreement with Zervas, ZIOGAS made a bribe payment of $10,000 to DIAMANTIS. Zervas later reimbursed ZIOGAS for that corrupt payment with a check from Family Eye Care.

22. DIAMANTIS directly and indirectly advised and pressured Public Official-1, Public Official-2, and Public Official-3 to terminate DSS's ongoing audit.

23. Having been advised and pressured indirectly by DIAMANTIS through Public Official-1 and Public Official-2, Public Official-3 took the official act of cancelling DSS's audit even though Public Official-3 already had concluded that Zervas had intentionally overbilled Medicaid, knew that DSS had not verified Zervas's proposed settlement amount, and was aware that DSS had not completed its audit.

24. Normally, when a DSS audit revealed that a medical provider had intentionally overbilled Medicaid, DSS would issue a payment suspension and disenroll the medical provider from Medicaid. But, because of the advice and pressure exerted by DIAMANTIS, none of those things happened to Zervas or Family Eye Care. Nor did DSS ever verify Zervas's proposed settlement figure, complete the audit, refer the matter to its Special Investigations Division, or take any other steps that could result in Zervas's referral for professional discipline or criminal investigation.

25. Instead, on or about May 1, 2020, with no further negotiation or investigation, Public Official-3 accepted Zervas's March 4, 2020 settlement proposal and cancelled DSS's incomplete audit with no further action.

26. Based on their prior agreement, on or about May 6, 2020, DIAMANTIS asked Zervas to calculate the amount of a final bribe payment, as he had discussed with ZIOGAS:

> And chris [ZIOGAS] asked me what would make me happy for a number was not something I can answer without feeling awkward. So all I can say is you put a value on what it was worth to you to save it all[.] I guess it's what was I willing to pay to save it all and no criminal fraud charges[.] By the way your lawyers did nothing the whole time three calls tops . I will tell you what Commissioner said to me about my 'friend' when we talk. Anyways I hope you are sleeping well now[.]

At the time, Public Official-2's title was "Commissioner."

27. On or about May 11, 2020, DIAMANTIS once again sought a final bribe payment from Zervas based on the prior agreement, texting, "Any thought as to me by chance."

28. On or about May 12, 2020, DIAMANTIS and ZIOGAS delivered Zervas's settlement payment to DSS's office. That payment was a $599,810 check from Family Eye Care.

29. On or about May 15, 2020, based on an agreement with Zervas, ZIOGAS made a final bribe payment to DIAMANTIS of $65,000. Zervas had already reimbursed Ziogas for that corrupt payment with a check from Family Eye Care.

All in violation of Title 18, United States Code, Sections 1951 and 2.

## COUNT TWO
(DIAMANTIS and ZIOGAS)
(Bribery)

30. Paragraphs 2–10 and 12–29 are incorporated by reference.

31. In or about the 2020 calendar year, in the District of Connecticut, the defendant KONSTANTINOS DIAMANTIS, also known as "Kosta," an agent of the government of the State of Connecticut—a state government receiving, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance—aided and abetted by the defendant CHRISTOPHER ZIOGAS, corruptly solicited and demanded for the benefit of a person, and accepted and agreed to accept, a thing of value from a person, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions of the State of Connecticut involving a thing of value of $5,000 or more, that is, DIAMANTIS, through ZIOGAS, solicited and accepted payments for DIAMANTIS's own benefit from Helen Zervas and Family Eye Care with the intent to be influenced and rewarded in connection with the State of Connecticut's pending Medicaid audit of Zervas and Family Eye Care.

All in violation of Title 18, United States Code, Sections 666(a)(1)(B) and 2.

## COUNT THREE
(DIAMANTIS and ZIOGAS)
(Conspiracy to Commit Extortion Under Color of Official Right)

32. Paragraphs 2–10 and 12–29 are incorporated by reference.

33. In or about 2020, in the District of Connecticut, the defendants KONSTANTINOS DIAMANTIS, also known as "Kosta," and CHRISTOPHER ZIOGAS, knowingly conspired with each other and with Helen Zervas to commit extortion (as that term is defined in Title 18, United States Code, Section 1951(b)(2)) under color of official right, and thereby to obstruct, delay, and affect commerce and the movement of articles and commodities in commerce (as that term is defined in Title 18, United States Code, Section 1951(b)(3)) in any way and degree; that is, DIAMANTIS and ZIOGAS conspired with Zervas for DIAMANTIS to obtain money from Zervas and Family Eye Care through ZIOGAS with their consent, under color of official right, in exchange for DIAMANTIS undertaking official acts and advising and pressuring other officials to undertake official acts regarding the State of Connecticut's pending Medicaid audit of Zervas and Family Eye Care.

All in violation of Title 18, United States Code, Section 1951.

COUNT FOUR
(DIAMANTIS and ZIOGAS)
(Conspiracy to Commit Bribery)

34. Paragraphs 2–10 and 12–29 are incorporated by reference.

35. In or about 2020, in the District of Connecticut, the defendants KONSTANTINOS DIAMANTIS, also known as "Kosta," and CHRISTOPHER ZIOGAS knowingly conspired and agreed with each other and others known and unknown to the Grand Jury to commit offenses against the United States, namely, DIAMANTIS, an agent of the government of the State of Connecticut, a state government receiving federal benefits in excess of $10,000 during each of the preceding and following one-year periods, agreed with ZIOGAS and Helen Zervas that:

a. DIAMANTIS, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions of the government of the State of Connecticut involving anything valued at $5,000 or more, would corruptly accept and

agree to accept something of value from ZIOGAS, Zervas, and Family Eye Care, in violation of Title 18, United States Code, Section 666(a)(1)(B); and

b. ZIOGAS and Zervas, with the intent to influence and reward DIAMANTIS in connection with any business, transaction, and series of transactions of the government of the State of Connecticut involving anything valued at $5,000 or more, would corruptly give and agree to give something of value to DIAMANTIS, in violation of Title 18, United States Code, Section 666(a)(2).

36. In particular, DIAMANTIS, ZIOGAS, and Zervas corruptly agreed that Zervas would make payments to DIAMANTIS through ZIOGAS, and DIAMANTIS would take official acts or pressure and advise other State officials to take official acts in connection with the State of Connecticut's pending Medicaid audit of Zervas and Family Eye Care.

37. In furtherance of this conspiracy, and to achieve its illegal objects, the following overt acts, among others, were committed in the District of Connecticut:

i. On or about March 4, 2020, ZIOGAS wrote a $20,000 check to DIAMANTIS;

ii. On or about March 5, 2020, Zervas wrote a $25,000 check from Family Eye Care to ZIOGAS;

iii. On or about March 12, 2020, ZIOGAS wrote a $10,000 check to DIAMANTIS;

iv. On or about May 12, 2020, Zervas wrote a $65,000 check from Family Eye Care to ZIOGAS;

v. On or about May 12, 2020, DIAMANTIS and ZIOGAS delivered to DSS a settlement check from Family Eye Care in the amount of $599,810;

vi. On or about May 14, 2020, Zervas wrote a $10,000 check from Family Eye Care to ZIOGAS; and

vii. On or about May 15, 2020, ZIOGAS wrote a $65,000 check to DIAMANTIS.

All in violation of Title 18, United States Code, Section 371.

COUNTS FIVE THROUGH ELEVEN
(DIAMANTIS)
(False Statements)

38. Paragraphs 2–10 and 12–29 are incorporated by reference.

39. On or about the following dates, in the District of Connecticut, the defendant KONSTANTINOS DIAMANTIS, also known as "Kosta," did knowingly and willfully make and cause to be made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the Federal Bureau of Investigation, a department and agency of the United States, each false statement as set forth below constituting a separate count of this Indictment:

| Count | Date | Substance of False Statement |
|---|---|---|
| 5 | August 29, 2023 | When asked if Public Official-1 was involved in talking about DSS's audit of Zervas and Family Eye Care, "[Public Official-1] had nothing to do with anything." |
| 6 | August 29, 2023 | When asked if DIAMANTIS spoke to Zervas about the May 15, 2020 payment of $65,000, "Oh no absolutely not" and "no, no, absolutely not, it was just Chris [Ziogas]." |
| 7 | August 29, 2023 | All communication about DSS's audit of Zervas and Family Eye Care were between DIAMANTIS and ZIOGAS, because "[Zervas] would never directly talk to me." |
| 8 | August 29, 2023 | With respect to the May 15, 2020 payment of $65,000, "[S]o here comes the 65. 65 comes out of the blue." |
| 9 | September 19, 2023 | DIAMANTIS received the May 15, 2020 payment of $65,000, "unprompted" and "was not even looking for money at that point." |
| 10 | December 8, 2023 | Concerning the May 15, 2020 payment of $65,000, DIAMANTIS understood it was ZIOGAS's money, not Zervas's. |
| 11 | December 8, 2023 | Concerning the May 15, 2020 payment of $65,000, DIAMANTIS did not ask for money and was in "complete shock" when he received it. |

All in violation of Title 18, United States Code, Section 1001(a)(2).

COUNTS TWELVE THROUGH THIRTEEN
(ZIOGAS)
(False Statements)

40. Paragraphs 2–10 and 12–29 are incorporated by reference.

41. On or about the following dates, in the District of Connecticut, the defendant CHRISTOPHER ZIOGAS, did knowingly and willfully make and cause to be made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the Federal Bureau of Investigation, a department and agency of the United States, each false statement as set forth below constituting a separate count of this Indictment:

| **Count** | **Date** | **Substance of False Statement** |
|---|---|---|
| 12 | June 21, 2022 | When asked about the March 4, 2020 payment of $20,000 to DIAMANTIS, ZIOGAS stated that he was not sure what the check was for. |
| 13 | June 21, 2022 | When asked about the March 4, 2020 payment of $20,000 to DIAMANTIS, ZIOGAS stated that he may have loaned the money to DIAMANTIS. |

All in violation of Title 18, United States Code, Section 1001(a)(2).

COUNT FOURTEEN
(DIAMANTIS)
(Filing a False Tax Return)

42. Paragraphs 2–10 and 12–29 are incorporated by reference.

43. On or about February 25, 2021, in the District of Connecticut, the defendant KONSTANTINOS DIAMANTIS, also known as "Kosta," did willfully make and subscribe a United States Individual Income Tax Return, Form 1040 (together with associated schedules), for the year ending December 31, 2020 (the "2020 Tax Return"), which was verified by a written declaration that it was made under the penalties of perjury and which he did not believe to be true

and correct as to every material matter. The 2020 Tax Return, which was filed with the Internal Revenue Service, omitted material information on line 8 ("Other income"), that is, approximately $95,000 in payments DIAMANTIS received from CHRISTOPHER ZIOGAS, Helen Zervas, and Family Eye Care in March and May 2020.

All in violation of Title 26, United States Code, Section 7206(1).

## COUNTS FIFTEEN THROUGH SEVENTEEN
(ZIOGAS)
(Illegal Monetary Transactions)

44. Paragraphs 2–10 and 12–29 are incorporated by reference.

45. On or about the following dates, in the District of Connecticut, the defendant CHRISTOPHER ZIOGAS, did knowingly engage and attempt to engage in the following monetary transactions in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity—namely, any act or activity by Helen Zervas constituting an offense involving a Federal health care offense—each transaction as set forth below constituting a separate count of this Indictment:

| Count | Date | Summary of Monetary Transaction |
|---|---|---|
| 15 | March 12, 2020 | Deposit of $25,000 check from Family Eye Care into ZIOGAS's account at People's United Bank ending in 4588. |
| 16 | May 13, 2020 | Deposit of $65,000 check from Family Eye Care into ZIOGAS's account at People's United Bank ending in 4588. |
| 17 | May 15, 2020 | Transfer of $65,000 to "Kosta Diamantis" via a check written on ZIOGAS's account at People's United Bank ending in 4588. |

All in violation of Title 18, United States Code, Section 1957.

COUNT EIGHTEEN
(ZIOGAS)
(Bank Fraud)

46. Paragraph 4 is incorporated by reference.

47. During all relevant times, the defendant CHRISTOPHER ZIOGAS was the trustee of a client trust, "Trust-1," the identity of which is known to the Grand Jury.

48. ZIOGAS's position as trustee gave him the ability to write checks drawn on Trust-1's account at People's United Bank, formerly United Bank.

49. People's United Bank was a financial institution that was insured by the Federal Deposit Insurance Corporation and that engaged in, and the activities of which affected, interstate and foreign commerce.

50. In or about November 2019, in the District of Connecticut and elsewhere, the defendant CHRISTOPHER ZIOGAS participated in a scheme and artifice to obtain money funds, credits, assets, and other property owned by, and under the custody and control of People's United Bank, by means of materially false and fraudulent pretenses, representations, and promises.

51. The purpose of the scheme was for ZIOGAS to deceive People's United Bank and to obtain money held in Trust-1's People's United Bank account for his own personal use and benefit by fraudulently preparing and causing to be negotiated a check drawn on Trust-1's People's United Bank account.

52. On or about November 26, 2019, in the District of Connecticut and elsewhere, the defendant CHRISTOPHER ZIOGAS knowingly executed and attempted to execute the bank fraud scheme described above by preparing and causing to be negotiated a $5,500 check drawn on Trust-1's People's United Bank account made out to "Kosta Diamantis," on the pretense of acting with proper authorization, but actually for ZIOGAS's own personal use and benefit.

All in violation of Title 18, United States Code, Sections 1344(2) and 2.

A TRUE BILL

FOREPERSON

UNITED STATES OF AMERICA

MARC H. SILVERMAN
ACTING UNITED STATES ATTORNEY

DAVID E. NOVICK
ASSISTANT UNITED STATES ATTORNEY

JONATHAN N. FRANCIS
ASSISTANT UNITED STATES ATTORNEY